1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TERRY MONTGOMERY,

11          Petitioner,              No. CIV S-04-2116 FCD DAD P

12      vs.

13   W. A. DUNCAN, et al.,

14          Respondents.             FINDINGS AND RECOMMENDATIONS

15   _____/

16          Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

18   entered against him on December 14, 1999, in the Solano County Superior Court on charges of

19   attempted murder, assault with a semiautomatic firearm, and possession of a firearm by a felon,

20   with sentencing enhancements for discharge of a firearm and causing great bodily injury.  This

21   matter is proceeding on the second amended petition filed December 6, 2004.  Petitioner seeks

22   relief on the grounds that: (1) the trial court violated his right to due process when it admitted

23   evidence of bullets found in his apartment; (2) the prosecutor committed misconduct during

24   closing argument; (3) his trial and appellate counsel rendered ineffective assistance; and (4) jury

25   instruction error violated his right to due process.  Upon careful consideration of the record and

26   /////

1

the applicable law, the undersigned will recommend that petitioner's application for habeas

corpus relief be denied.

## PROCEDURAL AND FACTUAL BACKGROUND[1]

Terry Lee Montgomery was convicted by a jury of attempted
murder (Pen. Code, § 664/187),[2] assault with a semiautomatic
firearm (§ 245, subd.(b), and possession of a firearm by a felon (§
12021, subd. (a)(1)). Attendant enhancements were found true.
Appellant was sentenced to a term of 30 years to life – five years
base term for attempted murder with a consecutive term of 25 years
to life for discharging a firearm and causing great bodily injury
within the meaning of section 12022.53, subdivision (d). The
remaining counts and enhancements were stayed.

* * *

The undisputed evidence establishes that appellant and the victim,
Sylvester Morris (hereafter Morris), who were acquainted, met on a
street in Vallejo on the evening of January 25, 1999, and that,
during the encounter, appellant shot Morris repeatedly, causing
massive and life-threatening injuries. Appellant fled the scene and
was arrested several weeks later in Milwaukee, Wisconsin on an
unrelated offense. A check revealed the warrant in Vallejo,
California.

Morris testified that appellant approached him on the street; they
walked and talked until appellant moved in front of him, turned,
and started shooting. Morris did not see the gun, but felt the eight
or nine bullets that pierced his arm, leg, back, side, and stomach.
As he fell to the sidewalk, Morris asked appellant why he shot him;
appellant ran away without responding. Morris denied appellant's
claim that, while talking with appellant, he reached into his
waistband.

An eyewitness testified that she observed two youths shouting and
arguing at each other on the opposite side of the street while
walking in her direction. She saw and heard appellant shoot at
Morris at least nine times and then, after firing a shot into the air,
walk calmly away.

Appellant's defense was premised on the theory of self-defense and
lack of intent to kill; alternatively, he claimed incapacity due to

---

[1]  The following summary is drawn from the April 27, 2001 opinion by the California
Court of Appeal for the First Appellate District (hereinafter Opinion), at pgs. 1-3. (Lodged Doc.
entitled "Exhibit 7.")

[2]  Unless otherwise indicated, all statutory references are to the Penal Code.

post-traumatic stress disorder (PTSD).  He testified that he had been concerned for his safety for several weeks because of threats and intimidation by Morris and his relatives, who were trying to remove appellant and his relatives as drug dealers in the neighborhood.  In response to those concerns, appellant bought a gun, which he had with him on the evening in question.  He stated he knew little about guns and had never fired a semiautomatic weapon prior to his encounter with Morris.  Appellant was apprehensive at Morris' approach to him and, when Morris put his hand into the waist of his pants, he believed Morris was reaching for a gun to shoot him.  As appellant described it, he tried to "get away" and, as he turned, he heard gunshots and realized he had pulled his gun out of his pocket.  He remembered pulling the trigger once, but did not intend to do so and did not intend to kill Morris.  Appellant then ran to a cab, took a bus to Oakland and boarded a bus for St. Louis, Missouri, but, on urging of his family, stopped in Milwaukee.  He did not return to his apartment in Vallejo prior to leaving town.

An expert testified that appellant suffered from moderate PTSD stemming from an earlier shooting incident.[3]  He explained that appellant had persistent nightmares and flashbacks and that a person who has PTSD does not respond normally to events and is suspicious, paranoid, and quick to aggression.  The doctor also testified that appellant had borderline cognitive functioning, which affects his understanding and his responses.

The jury rejected appellant's version of the event and convicted him on all counts.

On December 23, 2000, petitioner filed a timely appeal of his conviction in the California Court of Appeal for the First Appellate District.  (Lodged Doc. entitled "Exhibit 4.") Therein, he claimed that: (1) the trial court erred when it admitted into evidence the bullets found in his apartment; (2) the trial court erred in allowing the prosecution to play the edited tape of petitioner's police interrogation to the jury; (3) the trial court erred by excluding evidence corroborating petitioner's claim of self-defense; (4) the prosecutor committed misconduct during closing argument; (5) his trial counsel rendered ineffective assistance; and (6) the cumulative effect of errors at his trial violated his right to due process.  (Id.)  Petitioner's conviction was affirmed in its entirety in a reasoned decision dated April 27, 2001.  (Lodged Doc. entitled

_____

[3]  Appellant was shot at four times in a drive-by shooting in 1994 when he was 17 years old.  He was also shot at in a prior incident when he was 14 years old.

1  "Exhibit 7.")  Petitioner raised the same claims in a petition for review filed in the California

2  Supreme Court.  (Lodged Doc. entitled "Exhibit 8.")  That petition was summarily denied by

3  order dated August 15, 2001.  (Lodged Doc. entitled "Exhibit 9.")

4          On December 27, 2001, petitioner filed a habeas petition with the California

5  Court of Appeal for the First Appellate District.  (Respondents' May 31, 2005 Motion to Dismiss

6  (MTD), Ex. 3.)[4]  On January 7, 2002, the petition was denied.  (Id.)  In denying the petition the

7  state appellate court noted that  "[p]etitioner should first seek relief, if any, in the trial court."

8  (Id.)

9          On January 18, 2002, petitioner filed a habeas petition with the Solano County

10 Superior Court, claiming ineffective assistance of trial and appellate counsel and jury instruction

11 error with respect to the weapon enhancement finding.  (MTD, Ex. 4.)  On February 28, 2002,

12 that petition was denied.  (Id., Ex. 5.)  In its order the Superior Court stated that while the

13 ineffective assistance of appellate counsel claim was cognizable in a habeas proceeding, the

14 habeas petition should have been brought in the Court of Appeal.  (Id.)

15         On March 28, 2002, petitioner filed a second habeas petition with the Solano

16 County Superior Court, claiming a violation of his right to cross-examine adverse witnesses,

17 juror misconduct and jury instruction error on the attempted murder charge.  (Id., Ex. 6.)  On

18 May 21, 2002, the petition was denied in an order stating that "[p]etitioner's claims could have

19 been addressed through his appeal, but were not, and as a result are not cognizable on a Petition

20 for Writ of Habeas Corpus."  (Id., Ex. 7.)

21         On October 1, 2002, petitioner filed a habeas petition with the California Supreme

22 Court.  (Id., Ex. 8.)  That petition, dated September 26, 2002, presented the following claims:

23 violation of his right to cross-examine adverse witnesses, juror misconduct, and jury instruction

24 error on the attempted murder charge.  (Id.)  On October 1, 2002, petitioner filed a second habeas

25 

26         [4]  The docket report submitted by respondents does not reflect the claims raised in this
   petition.

                                                    4

1   petition with the California Supreme Court, which he labeled as "Supplemental."  (Id., Ex. 9.)

2   This supplemental petition is essentially a copy of the first habeas petition he filed with the

3   Solano County Superior Court on January 18, 2002, claiming ineffective assistance of trial and

4   appellate counsel and jury instruction error on the weapon enhancement allegation.  (See id., Ex.

5   4.)  On March 19, 2003, the California Supreme Court summarily denied the "supplemental"

6   habeas petition.  (Id., Ex. 10.)

7                                         ANALYSIS

8   I.  Standards of Review Applicable to Habeas Corpus Claims

9              A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

10   some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

11   861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

12   Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

13   interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

14   Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

15   corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

16   (1972).

17              This action is governed by the Antiterrorism and Effective Death Penalty Act of

18   1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

19   1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

20   habeas corpus relief:

21              An application for a writ of habeas corpus on behalf of a
           person in custody pursuant to the judgment of a State court shall
22              not be granted with respect to any claim that was adjudicated on
           the merits in State court proceedings unless the adjudication of the
23              claim -

24              (1) resulted in a decision that was contrary to, or involved
           an unreasonable application of, clearly established Federal law, as
25              determined by the Supreme Court of the United States; or

26   /////

5

1
           (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the

2
State court proceeding.

3
See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

4
(2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

5
        The court looks to the last reasoned state court decision as the basis for the state

6
court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

7
court reaches a decision on the merits but provides no reasoning to support its conclusion, a

8
federal habeas court independently reviews the record to determine whether habeas corpus relief

9
is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

10
Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

11
reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

12
AEDPA's deferential standard does not apply and a federal habeas court must review the claim

13
de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

14
1167 (9th Cir. 2002).

15
II.  Petitioner's Claims

16
    A.  Erroneous Admission of Evidence

17
        Petitioner's first claim is that the trial court violated his right to due process when

18
it admitted into evidence bullets found in the apartment he shared with five other people.

19
(Second Amended Petition (Pet.) at 5.)  Petitioner contends that the evidence was irrelevant

20
because there was no evidence linking him to the bullets.  (Id.)  The California Court of Appeal

21
described the background to this claim as follows.

22
        The prosecution sought to introduce into evidence bullets (shotgun
shells, rifle bullets, and bullets for semiautomatic weapons) that

23
were recovered several days after the shooting from the Vallejo
apartment that appellant leased, and shared, with five other

24
persons.  Defense counsel objected on grounds of relevancy and
urged that it would have a prejudicial impact on the jury.  The trial

25
court ruled that the ammunition was admissible to rebut appellant's
claims of ignorance about firearms and the recent nature of his gun

26
purchase.

(Opinion at 3.)  The California Court of Appeal rejected petitioner's evidentiary claim on the merits and also concluded that his due process argument had been waived because of the failure of his trial counsel to object to the admission of the bullets on this ground.  In this regard, the court reasoned as follows:

> On appeal, the defense argues that the bullets constituted evidence of prior uncharged misconduct and are inadmissible under Evidence Code section 1101, which provides that evidence of other acts is inadmissible to establish propensity or disposition.  No objection was made on this ground at trial, however, and the issue was therefore waived for appeal.  (citations omitted.)
>
> In any event, the contention is without merit.  The evidence was not introduced to prove character or disposition.  Its stated purpose was to contradict appellant's self-defense claim, specifically claims of ignorance as to guns and the claim that he only recently had armed himself out of fear.  Subdivision (c) of section 1101 provides:  "Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness."
>
> Relevancy aside, appellant also argues that the sheer number of bullets introduced (approximately 60) rendered the evidence more prejudicial than probative and the trial court should have excluded the evidence under Evidence Code section 352.  The prosecution posited at trial that any prejudice was minimal or nonexistent in view of the clear showing that appellant shot the victim a minimum of seven times with a semiautomatic weapon.
>
> Prior to ruling, the trial court did not discuss and made no express finding as to Evidence Code section 352 and the need to balance probity against prejudicial effect.  A trial court has substantial discretion in ruling under the section and, though subject to review, appellate courts are reluctant to overturn the ruling absent a showing that the court exercised its discretion "in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice."  (citations omitted.)  We find no abuse of discretion here.
>
> Nor is there merit to appellant's claim that admission of the evidence violated his right to due process.  Failure to object precludes that claim as well.  By no stretch does the failure to exclude the proffered evidence in the circumstances of this case amount to a denial of "that fundamental fairness essential of the very concept of justice" necessary to invoke due process considerations.  (See Lisenba v. People of State of California (1994) 314 U.S. 219, 236.)

(Id. at 3-5.)

1    Respondents argue that the state appellate court's ruling constitutes a procedural

2   bar precluding this court from addressing the merits of petitioner's due process claim.  (Answer

3   at 2; Memorandum of Points and Authorities in Support of Answer (P&A) at 4.)  Alternatively,

4   respondents contend that the claim should be rejected on the merits.  (Id.)  The court will address

5   both of these contentions below.

6        1.  Procedural Default

7    State courts may decline to review a claim based on a procedural default.

8   Wainwright v. Sykes, 433 U.S. 72, 81-82 (1977).  As a general rule, a federal habeas court "'will

9   not review a question of federal law decided by a state court if the decision of that court rests on

10  a state law ground that is independent of the federal question and adequate to support the

11  judgment.'"  Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996)

12  (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  The state rule for these purposes is

13  only "adequate" if it is "firmly established and regularly followed."  Id.  (quoting Ford v.

14  Georgia, 498 U.S. 411, 424 (1991)).  See also Bennett v. Mueller, 322 F.3d 573, 583 (9th Cir.

15  2003) ("[t]o be deemed adequate, the state law ground for decision must be well-established and

16  consistently applied.")  The state rule must also be "independent" in that it is not "interwoven

17  with the federal law."  Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting Michigan

18  v. Long, 463 U.S. 1032, 1040-41 (1983)).  Even if the state rule is independent and adequate, the

19  claims may be reviewed by the federal court if the petitioner can show:  (1) cause for the default

20  and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to

21  consider the claims will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at

22  749-50.

23    Respondents have met their burden of adequately pleading an independent and

24  adequate state procedural ground as an affirmative defense.  See Bennett, 322 F.3d at 586.

25  Petitioner does not deny that his trial counsel did not raise a contemporaneous objection on due

26  process grounds to the admission into evidence of the bullets found in his apartment.  Petitioner

has also failed to meet his burden of asserting specific factual allegations demonstrating the inadequacy of California's contemporaneous-objection rule as unclear, inconsistently applied or not well-established, either as a general rule or as applied to him.  Bennett, 322 F.3d at 586; Melendez v. Pliler, 288 F.3d 1120, 1124-26 (9th Cir. 2002).  Petitioner's claim is therefore procedurally barred.  See Coleman, 501 U.S. at 747; Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Paulino v. Castro, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (claim that defendant's due process rights were violated by the trial court's failure to instruct sua sponte on the definition of "major participant" was procedurally barred because counsel failed to make a contemporaneous objection to the instruction at trial).  Petitioner has failed to demonstrate that there was cause for his procedural default or that a miscarriage of justice would result absent review of the claim by this court.  See Coleman, 501 U.S. at 748; Vansickel v. White, 166 F.3d 953, 957-58 (9th Cir. 1999).  The court is therefore precluded from considering the merits of this claim.

### 2.  Merits of Due Process Claim

Even were this claim not procedurally barred, for the following reasons it lacks merit.  As explained above, a federal writ of habeas corpus is not available for alleged error in the interpretation or application of state law.  Middleton, 768 F.2d at 1085.  Absent some federal constitutional violation, a violation of state law does not provide a basis for habeas relief. Estelle, 502 U.S. at 67-68.  Accordingly, a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process.  Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991) ("the issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point").

A writ of habeas corpus will be granted for the erroneous admission of evidence "only where the 'testimony is almost entirely unreliable and ... the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings.'"

9

1   Mancuso v. Olivarez, 292 F.3d 939, 956 (9th Cir. 2002) (quoting Barefoot v. Estelle, 463 U.S.

2   880, 899 (1983)).  Evidence violates due process only if "there are no permissible inferences the

3   jury may draw from the evidence."  Jammal, 926 F. 2d at 920.  Even then, the erroneously

4   admitted evidence must "be of such quality as necessarily prevents a fair trial."  Id. (quoting

5   Kealohapauole v. Shimoda, 800 F.2d 1463 (9th Cir. 1986)).  For purposes of the AEDPA,

6   petitioner must demonstrate that the California courts' rejection of his federal due process claim

7   was contrary to or an unreasonable application of clearly established federal law.  28 U.S.C. §

8   2254(d)(1);  Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).

9            For the reasons explained by the California Court of Appeal, the admission into

10  evidence of the bullets found in petitioner's apartment did not render his trial fundamentally

11  unfair.  Under the circumstances of this case, where the evidence was uncontroverted that

12  petitioner shot the victim multiple times with a semi-automatic weapon, the admission into

13  evidence of bullets did not prevent him from receiving a fair trial.  Further, the evidence was

14  admitted to rebut petitioner's testimony that he was unfamiliar with guns, including

15  semiautomatic weapons, and that he had armed himself only recently and solely out of fear.  The

16  jury could draw rational and constitutionally permissible inferences from the challenged evidence

17  to question petitioner's testimony in this regard.  The decision of the state court rejecting

18  petitioner's due process claim is therefore not contrary to or an unreasonable application of

19  federal law.  Jammal, 926 F. 2d at 920.  Accordingly, petitioner is not entitled to relief on this

20  claim.

21          B.  Prosecutorial Misconduct

22          Petitioner's next claim is that the prosecutor committed misconduct during

23  closing argument when he mischaracterized the evidence introduced at trial, arguing that

24  petitioner was "lying in wait" for Morris.  (Pet. at 5.)  The California Court of Appeal fairly

25  described the background to this claim as follows:

26  /////

1

2

3

4

5

6

7

8

At closing argument, the prosecutor referred to certain testimony regarding appellant's activities preceding the shooting, specifically that appellant was "leaning against a wall" just before the shooting. Witnesses had so described appellant. The prosecutor argued that appellant was waiting for Morris, characterizing the evidence as follows: "In sum, the defendant shot an unarmed man seven to eight times, making contact at least four or five times from close range *after lying in wait for him,* then he calmly walked away from the scene." (Italics added.) The use of the phrase "lying in wait" was perhaps an overstatement, but not unreasonable argument. In the context of this case, the phrase had no reference to the legal definition of special circumstances relating to lying in wait as used in capital cases. It is not reasonably likely that the jury understood or applied the comment in an improper or erroneous manner. (citations omitted.)

9

10

11

12

13

First, claims of misconduct are generally deemed waived by failure to object and/or request curative admonition in the trial court. (citation omitted.) None was made here. Also, to support a claim of prosecutorial misconduct, appellant must demonstrate that his right to a fair trial was prejudiced by the actions of the prosecutor. (citation omitted.) Appellant has not done so here. The prosecutor's single comment, even if improper, could not have affected the outcome of this trial.

14    (Opinion at 7.)

15           Respondents argue that this claim is subject to a procedural bar because of the

16    failure of petitioner's trial counsel to register a contemporaneous objection to the prosecutor's

17    closing argument. (P&A at 6.) They also argue that the claim should be rejected on the merits.

18           As was the case with the claim addressed above, the state court determination that

19    petitioner waived his claim of prosecutorial misconduct because of his trial counsel's failure to

20    make a contemporaneous objection constitutes a procedural bar precluding this court from

21    addressing the merits of the claim. However, even assuming arguendo that this claim is not

22    subject to a procedural bar, it should be rejected on the merits.

23           A defendant's due process rights are violated when a prosecutor's misconduct

24    renders a trial fundamentally unfair. <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986).

25    However, such misconduct does not, per se, violate a petitioner's constitutional rights. <u>Jeffries v.</u>

26    <u>Blodgett</u>, 5 F.3d 1180, 1191 (9th Cir. 1993) (citing <u>Darden</u>, 477 U.S. at 181 and <u>Campbell v.</u>

11

1  Kincheloe, 829 F.2d 1453, 1457 (9th Cir. 1987)).  Claims of prosecutorial misconduct are

2  reviewed "'on the merits, examining the entire proceedings to determine whether the prosecutor's

3  [actions] so infected the trial with unfairness as to make the resulting conviction a denial of due

4  process.'"  Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted).  See also

5  Greer v. Miller, 483 U.S. 756, 765 (1987); Turner v Calderon, 281 F.3d 851, 868 (9th Cir. 2002).

6  Relief on such claims is limited to cases in which the petitioner can establish that prosecutorial

7  misconduct resulted in actual prejudice.  Johnson, 63 F.3d at 930 (citing Brecht v. Abrahamson,

8  507 U.S. 619, 637-38 (1993); see also Darden, 477 U.S. at 181-83; Turner, 281 F.3d at 868.  Put

9  another way, prosecutorial misconduct violates due process when it has a substantial and

10  injurious effect or influence in determining the jury's verdict.  See Ortiz-Sandoval v. Gomez, 81

11  F.3d 891, 899 (9th Cir. 1996).

12           In considering claims of prosecutorial misconduct involving allegations of

13  improper argument the court is to examine the likely effect of the statements in the context in

14  which they were made and determine whether the comments so infected the trial with unfairness

15  as to make the resulting conviction a denial of due process.  Turner, 281 F.3d at 868; Sandoval v.

16  Calderon, 241 F.3d 765, 778 (9th Cir. 2001); see also Donnelly v. DeChristoforo, 416 U.S. 637,

17  643 (1974); Darden, 477 U.S. at 181-83.  In fashioning closing arguments, prosecutors are

18  allowed "reasonably wide latitude," United States v. Birges, 723 F.2d 666, 671-72 (9th Cir.

19  1984), and are free to argue "reasonable inferences from the evidence."  United States v. Gray,

20  876 F.2d 1411, 1417 (9th Cir. 1989).  See also Ducket v. Godinez, 67 F.3d 734, 742 (9th Cir.

21  1995).  "[Prosecutors] may strike 'hard blows,' based upon the testimony and its inferences,

22  although they may not, of course, employ argument which could be fairly characterized as foul or

23  unfair."  United States v. Gorostiza, 468 F.2d 915, 916 (9th Cir. 1972).  "Judicial review of a

24  defense attorney's summation is . . . highly deferential-and doubly deferential when it is

25  conducted through the lens of federal habeas."  Yarborough v. Gentry, 540 U.S. 1, 6 (2003).

26  /////

1    At petitioner's trial, police sergeant Salinas testified that several eyewitnesses told

2 him they saw petitioner leaning against a glass window as they passed him on the street.

3 (Reporter's Transcript on Appeal (RT) at 147.)  As the witnesses neared the street corner, they

4 saw the victim walking in the opposite direction, toward petitioner.  (Id.)  Shortly thereafter, they

5 heard gunshots.  (Id.)  Referring to this testimony in his closing argument, the prosecutor made

6 the following comments:

> 7    But look at the facts of this case.  Somebody confronted with an
>    unarmed person after having been waiting for this person
> 8    presumably or waiting for somebody when you're leaning up
>    against the wall . . .  In sum, the defendant shot an unarmed man
> 9    seven to eight times, making contact at least four or five times
>    from close range after lying in wait for him, then he calmly walked
> 10   away from the scene.

11 (Id. at 451, 452.)

12    The decision of the California Court of Appeal that this brief portion of the

13 prosecutor's closing argument did not render petitioner's trial unfair is not contrary to or an

14 unreasonable application of federal law as set forth above and should not be set aside.  The

15 argument that petitioner was waiting, or "lying in wait" for the victim was a reasonable inference

16 from the evidence introduced at petitioner's trial.  Although the phrase "lying in wait" can be a

17 term of art in the context of a special circumstance allegation, there was no such allegation

18 against petitioner in this case.  Accordingly, there could be no substantial prejudice from the

19 prosecutor's use of this term.  Because petitioner has failed to demonstrate that he suffered actual

20 prejudice from the challenged comments during the prosecutor's closing argument, he is not

21 entitled to relief on this claim.

22    C.  Jury Instruction Error

23    Petitioner next claims that the trial court erroneously instructed his jury on the

24 discharge of a firearm enhancement.  (Pet. at handwritten page following p. 6.)[5]  Respondents

25 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26    [5] Respondents also argue that petitioner failed to exhaust this claim in state court.  (P&A
at 9 n.3.)  The argument is unpersuasive.  Petitioner raised this same claim in a petition for

1  concede that the trial court's instruction with respect to this enhancement was erroneous but

2  contends that the error was harmless.  (P&A at 9.)

3          1.  Standard of Review

4          Petitioner raised this jury instruction claim for the first time in his January 18,

5  2002 habeas petition filed in the Solano County Superior Court.  (MTD, Ex. 4.) The Superior

6  Court denied that petition, reasoning as follows:

> Upon reading the application filed herein, the Court finds that
> Petitioner's claim of ineffective assistance of appellate counsel is
> cognizable in a Habeas Corpus proceeding.  (In re Rand (1971) 4
> Cal.3d 337, 343.)  Petitioner's application for Writ of Habeas
> Corpus should be brought in the Court of Appeal.  (People v.
> Valenzuela (1985) 175 Cal.App.3d 381, 388.)
>
> IT IS THEREFORE ORDERED that the Petition for Writ of
> Habeas Corpus is denied.

12  (Id., Ex. 5.)  Based on the phrasing of this order, it appears that the Superior Court did not

13  address petitioner's claim of jury instruction error, focusing instead on his claim of ineffective

14  assistance of counsel.

15          Petitioner raised his jury instruction claim again in his October 1, 2002

16  "supplemental" petition for a writ of habeas corpus filed in the California Supreme Court.  (Id.,

17  Ex. 9.)  On March 19, 2003, the California Supreme Court summarily denied that petition.  (Id.,

18  Ex. 10.)  Ordinarily, this court would employ the presumption set forth in Ylst v. Nunnemaker,

19  501 U.S. 797 (1991), which held that "where there has been one reasoned state judgment

20  rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same

21  claim [are presumed to] rest upon the same ground."  Id. at 803.  However, in this case, the

22  Solano County Superior Court did not address petitioner's jury instruction claim.  Accordingly,

23  there is no reasoned state court judgment upon which the Supreme Court could have relied.

24  Under these circumstances, this court will assume that the California Supreme Court's summary

25

26  habeas corpus filed in the California Supreme Court.  (MTD, Ex. 9 at 4.)  Accordingly,
petitioner's jury instruction claim has been properly exhausted.

1    order denying petitioner's habeas petition was a rejection of petitioner's jury instruction claim

2    on the merits.  See Hunter v. Aispuro, 982 F.2d 344, 347 (9th Cir. 1992) (pre-AEDPA decision

3    holding that the California Supreme Court's denial of a habeas petition without comment or

4    citation constitutes a decision on the merits of the federal claims raised therein).  Because the

5    California Supreme Court did not address petitioner's jury instruction claim in a reasoned

6    opinion, this court will independently review the record to determine whether the Supreme

7    Court's rejection of petitioner's claim of jury instruction error is objectively unreasonable.

8    Himes v. Thompson, 336 F.3d at 853.

9                    2.  Merits of Jury Instruction Claim

10                   The information by which petitioner was charged alleged that he personally and

11   intentionally discharged a firearm which proximately caused great bodily injury to Morris, within

12   the meaning of Penal Code § 12022.53(d).  (Clerk's Transcript on Appeal (CT) at 10.)  Cal.

13   Penal Code § 12022.53(d) provides:

14              Notwithstanding any other provision of law, any person who, in the
                commission of a felony specified in subdivision (a), Section 246,
15              or subdivision (c) or (d) of Section 12034, personally and
                intentionally discharges a firearm and proximately causes great
16              bodily injury, as defined in Section 12022.7, or death, to any
                person other than an accomplice, shall be punished by an
17              additional and consecutive term of imprisonment in the state prison
                for 25 years to life.

18

19   Notwithstanding the requirement under § 12022.53(d) that the accused intentionally "discharge"

20   a firearm in order to be found guilty of the firearm use enhancement, petitioner's jury was

21   instructed on this allegation as follows:

22              It is alleged in Counts 1 and 2 that the defendant personally used a
                firearm during the commission of the crime charged.  If you find
23              the defendant guilty of one or more of the crimes charged, you
                must determine whether the defendant personally used a firearm in
24              the commission of that felony.

25              The word "firearm" includes any device designed to be used as a
                weapon from which is expelled through a barrel a projectile by the
26              force of any explosion or other form of combustion.  The term

                                             15

"personally used a firearm" as used in this instruction means that
the defendant must have intentionally displayed a firearm in a
menacing manner, intentionally fired it, or intentionally struck or
hit a human being with it.

(RT at 413.)  As noted by respondents, "because the trial court instructed the jury that the

enhancement included conduct other than actual discharge of a firearm, it did not correctly define

that element of § 12022.53(d)."  (P&A at 10.)

Where a trial court fails "to properly instruct the jury regarding an element of the

charged crime," the court commits "a constitutional error that deprives the defendant of due

process."  Conde v. Henry, 198 F.3d 734, 740 (9th Cir. 1999) (quoting Hennessy v. Goldsmith,

929 F.2d 511, 514 (9th Cir. 1991)).  However, harmless error analysis is ordinarily applied to

trial errors, including a jury instruction that actually omits an element of the offense.  Neder v.

United States, 527 U.S. 1, 8, 11 (1999); United States v. Cherer, 513 F.3d 1150, 1155 (9th Cir.

2008) (omitting an element of the offense from a jury instruction is harmless if the omitted

element is uncontested and supported by overwhelming evidence); see also Mitchell v. Esparza,

540 U.S. 12, 16 (2003) ("[W]e have often held that the trial court's failure to instruct a jury on all

of the statutory elements of an offense is subject to harmless-error analysis.")  In determining

whether the trial court's error in giving the instruction on the weapon use enhancement entitles

petitioner to habeas relief, this court must ask "whether the error had a substantial and injurious

effect" on the outcome of the trial.  Brecht, 507 U.S. at 637.  Under this standard of review, a

habeas court may not grant relief unless the petitioner can establish that, as a result of the state

trial court's error, he suffered "actual prejudice;" i.e., that as a result of the error, the outcome of

the trial was rendered fundamentally unfair.  Id.

Here, petitioner has failed to demonstrate that the jury instruction error with

regard to the Penal Code § 12022.53(d) enhancement had a "substantial and injurious effect" on

the outcome of his trial.  There was no dispute at trial that petitioner actually discharged a semi-

automatic firearm, causing great bodily injury to Morris.  Under these circumstances, there is no

possibility that the jury would have found the special circumstance allegation true on the basis

that petitioner merely displayed the firearm or struck Morris with it.  Accordingly, inclusion in

the jury instruction of these additional elements could not have resulted in actual prejudice.  See

Cherer, 513 F.3d at 1154-55 (erroneous instruction omitting element that the defendant believe

his target was a minor was harmless error in light of the overwhelming evidence that the

defendant believed his target was fourteen years old).  For these reasons, petitioner is not entitled

to relief on this claim.

     D.  Ineffective Assistance of Counsel

        Petitioner raises numerous claims of ineffective assistance of trial and appellate

counsel.  After setting forth the applicable legal principles, the court will evaluate these claims in

turn below.

     1.  Legal Standards

        The Sixth Amendment guarantees the effective assistance of counsel.  The United

States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

counsel, a petitioner must first show that, considering all the circumstances, counsel's

performance fell below an objective standard of reasonableness.  466 U.S. at  687-88.  After a

petitioner identifies the acts or omissions that are alleged not to have been the result of

reasonable professional judgment, the court must determine whether, in light of all the

circumstances, the identified acts or omissions were outside the wide range of professionally

competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a

petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland,

466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at

694.  A reasonable probability is "a probability sufficient to undermine confidence in the

outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981

1  (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was

2  deficient before examining the prejudice suffered by the defendant as a result of the alleged

3  deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

4  sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955

5  (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

6          In assessing an ineffective assistance of counsel claim "[t]here is a strong

7  presumption that counsel's performance falls within the 'wide range of professional assistance.'"

8  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There

9  is in addition a strong presumption that counsel "exercised acceptable professional judgment in

10  all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

11  Strickland, 466 U.S. at 689).

12          2.  Trial Counsel

13          Petitioner claims that his trial counsel rendered ineffective assistance by: (1)

14  failing to object to the testimony of Detective Matthews in which he described inaudible answers

15  on the audiotape of petitioner's statements to police; (2) failing to object to the admission of the

16  audiotape on the grounds that it was not authenticated; and (3) failing to introduce evidence that

17  the victim was threatening to move petitioner out of the neighborhood.  (Pet. at 6 and

18  handwritten page preceding p. 4.)  Each aspect of this claim will be addressed below.

19          a.  Testimony of Detective Matthews

20          Petitioner claims that his trial counsel rendered ineffective assistance by failing to

21  object to the testimony of Detective Matthews regarding the substance of answers given by

22  petitioner in his statement to police that 's were inaudible on the audiotape of that interview.  The

23  California Court of Appeal explained the background to this claim as follows:

24          Appellant contends that the trial court erred in allowing into
           evidence an audio tape of his statement to police following his
25          arrest in Milwaukee.  Defense counsel succeeded in having parts of
           the tape deleted; the remaining parts were ruled admissible over
26          hearsay and relevancy objections, as well as an Evidence Code

section 352 objection that the redacted tape was cumulative and more prejudicial than probative. The court concluded that the tape was relevant for the purpose intended, namely, to demonstrate the officers' interrogation technique, and was more probative than prejudicial. The court also admonished the jury on the tape's limited admissibility and urged them not to speculate on the content of the deleted portions or why they were deleted.

Appellant asserts on appeal that the tape adds nothing to the evidentiary basis of the prosecution case and, as such, is cumulative and prejudicial. The main complaint, however, is that the redacted tape is unintelligible in parts and inaudible in others, permitting the jury to speculate about appellant's answers to the questions he was asked. In a separate claim, appellant also argues that the trial court should not have permitted the attending officer to testify that appellant nodded, shook his head, and/or in other ways responded to some of the questions. Trial counsel made no objection to the officer's testimony at trial.

(Opinion at 5.)

The written transcript of petitioner's police interrogation reflects that petitioner's replies to many of the questions posed to him were designated on the transcript as unintelligible or not audible. (Answer, Ex. 3 at 2-5, 7-8, 9, 13, 16, 19-20.) When asked at trial how petitioner responded to certain of these questions, Detective Matthews testified that petitioner "nodded his head no" when he was asked whether he knew Morris, and "shook his head no" when asked whether he knew Bobbie Stampley, was present or involved in the shooting, knew the person he shot, and had an alibi. (RT at 155-56.) Petitioner's trial counsel did not object to the prosecutor's questions posed to Detective Matthews regarding petitioner's non-verbal response to the interrogation questions. (Id.)

Petitioner has failed to demonstrate that his trial counsel rendered ineffective assistance by failing to object to this testimony of Detective Matthews. As the state appellate court observed, "none of the questions to which the response was inaudible suggested incriminating information." (Opinion at 6.) Accordingly, the failure of petitioner's trial counsel to object did not result in a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Because

1  petitioner has failed to demonstrate prejudice with respect to this claim, he is not entitled to

2  habeas relief.

3                          b.  Admission of the Interrogation Audiotape

4              On appeal, petitioner claimed that the trial court erred in admitting into evidence

5  the audiotape of his statements to police because the audiotape was not properly authenticated.

6  (Opinion at 6.)  The California Court of Appeal rejected this claim, concluding that it "was

7  waived by the failure to object at trial."  (Id.)  In the instant petition, petitioner claims that his

8  trial attorney rendered ineffective assistance in failing to object to the admission of the audiotape

9  on the grounds that it was not properly authenticated.  (Pet. at 6.)  The California Court of Appeal

10  also rejected this claim of ineffective assistance of counsel on the basis that petitioner had failed

11  to establish prejudice.  (Opinion at 8.)

12             There is no evidence or credible argument made before this court that the

13  audiotape of petitioner's statements was inadmissible due to lack of authentication.  (See RT at

14  62, 150.)   Accordingly, petitioner has failed to demonstrate that his counsel should have

15  objected to the tape's admissibility on this ground or that he suffered prejudice as a result of his

16  counsel's inaction.  For these reasons, petitioner is not entitled to habeas relief on this claim.

17                    c.  Failure to Introduce Evidence of Animosity between Petitioner and Victim

18             Petitioner claims that his trial counsel rendered ineffective assistance by failing to

19  introduce evidence concerning efforts by the victim to remove him from the neighborhood.

20  Petitioner explains:

21                  Mr. Morris told Detective Matthews and his partner in the hospital
                   that his cousin was out to get me and move me out [sic] their
22                 neighborhood.  Then this was important because my case was base
                   [sic] on me being worry [sic] about my life.  And I was told by my
23                 father that he saw Mr. Morris and his cousin June Bug was [sic]
                   coming out of his building dressed in black.  Then when he with
24                 [sic] in his building he was told my [sic] his neighbor that some
                   men dressing in black was asking about us.  So I got afraid.  So my
25                 case was on them [sic] statements.  So he never got that in to the
                   jury.  Then on my appeal I as [sic] why he never got that in for me.
26                 He said he must have forgot.  Then he told the judge he need to get

                                          20

1        that in so the judge told him to wait.  So he said he will because he
had some more evidence.  But he never with [sic] back to it.  And I
2        as [sic] him why.  He said he must have forgot.

3  (Pet., handwritten page preceding p. 4.)

4        Petitioner has again failed to demonstrate either deficient performance or

5  prejudice with respect to this aspect of his ineffective assistance of counsel claim.  With respect

6  to trial counsel's efforts to question the victim, Mr. Morris, about efforts to force petitioner out of

7  the neighborhood, the state appellate court explained as follows:

8        Appellant's defense theory was premised, in part, on the claim that
he feared for his life because Morris and his cousin were trying to
9        remove him from their neighborhood and had been "looking for
him."  He contends that the trial court erroneously sustained
10      objections to questions that sought to prove this basic defense.  The
disputed questions were addressed to Morris and to the
11      investigating officer who spoke to Morris after the shooting
incident.
12

13      During cross-examination, counsel asked Morris if his cousin was
trying to move appellant out of the neighborhood and whether he
14      had told the investigating officer that his cousin was trying to
remove appellant.  Counsel also asked the investigating officer
15      whether Morris told him he was aware of the cousin's intentions.
The court properly sustained hearsay and improper impeachment
16      objections to those questions and to any others relating to the
cousin's intentions.

17  (Opinion at 6.)

18        Thus, it appears that petitioner's trial counsel did question Morris about attempts

19  to force petitioner out of the neighborhood.  (See RT at 51-52.)  Petitioner has failed to suggest

20  anything further that counsel should have done with respect to his cross-examination of Morris.

21  Even assuming arguendo that trial counsel rendered a deficient performance in his questioning of

22  Morris, petitioner has failed to demonstrate prejudice.   As explained by the California Court of

23  Appeal,

24      We find no error in the trial court's [evidentiary] ruling.  The
ruling in no way impeded the presentation of appellant's defense.
25      The purported turf war and alleged threats and intimidation that it
implied were extensively presented to the jury by appellant and a
26      number of defense witnesses.

1    (Id. at 7.)  Under these circumstances, there is no reasonable probability that the result of the

2    proceedings would have been different even if trial counsel had induced Morris to admit efforts

3    undertaken by him to force petitioner out of the neighborhood.  Petitioner's jury was made aware

4    of the purported antagonism between petitioner and the victim's family even without Morris's

5    corroboration.  Accordingly, petitioner is not entitled to relief on this claim.

6                      3.  Claims Raised in the Traverse

7                      Petitioner raises several claims of ineffective assistance of trial counsel in his

8    traverse.  Specifically, he claims that his trial counsel rendered ineffective assistance by failing

9    to: (1) object to the admission of evidence regarding the bullets found in petitioner's apartment;

10   (2) object to the prosecutor's closing argument; (3) object to the giving of an erroneous jury

11   instruction on the enhancement for use of a firearm; and (4) object to the introduction of out-of-

12   court statements made by several eyewitnesses to the crime.  (Traverse at 5.)  To the extent

13   petitioner is attempting to belatedly raise new claims in his traverse, relief should be denied.  See

14   Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (a traverse is not the proper

15   pleading to raise additional grounds for relief); see also Greenwood v. Fed. Aviation Admin., 28

16   F.3d 971, 977 (9th Cir. 1994) ("we review only issues which are argued specifically and

17   distinctly in a party's opening brief").  Even if these claims had been properly raised, petitioner

18   has failed to demonstrate that any of them rise to the level of a constitutional violation entitling

19   him to relief.

20                      As explained above, this court has determined that no constitutional error

21   occurred as a result of the trial court's admission into evidence of the bullets found in petitioner's

22   apartment, the prosecutor's closing argument, or the erroneous jury instruction on the discharge

23   of a firearm enhancement.  Accordingly, with respect to the first three claims raised for the first

24   time in his traverse, petitioner has failed to demonstrate prejudice or "a reasonable probability

25   that, but for counsel's unprofessional errors, the result of the proceeding would have been

26   /////

1  different."  Strickland, 466 U.S. at 694.  For this reason, he is not entitled to relief on these

2  claims.

3              As noted above, petitioner also claims that his trial counsel rendered ineffective

4  assistance by failing to object to the use of out-of-court statements made by several eyewitnesses

5  to the crime.  He describes the basis for this contention as follows:

6              Petitioner has a sixth amendment right to confront and cross
             examine witnesses.  When defense counsel stipulated to the use of
7              the out of court statements because the witnesses were unavailable
             he rendered ineffective assistance.
8
             The state's case relied primarily on the uncorroborated and
9              unchallenged statements of Diaz and Santos.  When in fact the
             evidence totally contradicted their out of court statements.  The
10             victim, Sylvester Morris, testified that he did not pass, nor did he
             see any Mexican males just prior to being shot.  The lone eye
11             witness Judy Golden-Harglroad, testified that she saw and heard
             the victim and petitioner arguing before the shooting commence.
12
             When viewed in light most favorable to the prosecution, without
13             the evidence of the out of court statements, the outcome of the trial
             would have been different.  Especially when you consider
14             petitioner's imperfect self-defense theory, which was triggered by
             his Post-traumatic stress disorder.
15

16  (Traverse at 5.)

17              From exhibits attached to petitioner's traverse, it appears that Vallejo Police

18  Officer Joel Salinas interviewed two Spanish speaking witnesses to the shooting, who told him

19  that they walked past petitioner immediately before the shooting and observed him leaning

20  against a glass window.  (Traverse, Exhibit labeled "B.")  Officer Salinas related the substance of

21  his conversations with these two witnesses at petitioner's trial.  (RT at 145-49.)  Petitioner is

22  apparently claiming that his trial counsel should have objected to this testimony.

23              Petitioner has failed to demonstrate prejudice with respect to this claim.  There is

24  no evidence in the record before this court that the result of petitioner's trial would have been

25  different if counsel had objected to Officer Salinas's testimony regarding his interview of the

26  "out-of-court" witnesses.  The admission of evidence that petitioner was leaning against a

1    window prior to the shooting did not render petitioner's trial fundamentally unfair.  Accordingly,

2    petitioner is not entitled to relief on this claim.

3                    4.  Ineffective Assistance of Appellate Counsel

4                    Petitioner claims that his appellate counsel rendered ineffective assistance

5    because: (1) her opening brief on appeal was untimely; (2) the opening brief misstated or omitted

6    facts; and (3) counsel improperly failed to raise a jury instruction claim "as to the elements of a

7    weapon use enhancement 12022.53(b)."  (Pet. at 6.)

8                    The Strickland standards apply to appellate counsel as well as trial counsel.  Smith

9    v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

10   However, an indigent defendant "does not have a constitutional right to compel appointed

11   counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

12   professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751

13   (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the

14   ability of counsel to present the client's case in accord with counsel's professional evaluation

15   would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

16   Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

17   not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

18   meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a

19   showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

20   to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this

21   context, petitioner must show that, but for appellate counsel's errors, he probably would have

22   prevailed on appeal.  Id. at 1434 n.9.

23                   Petitioner has failed to demonstrate prejudice with respect to these claims.  There

24   is no evidence before this court to indicate that petitioner suffered prejudice as a result of a late

25   filed brief on appeal or misstatements of fact in the briefing submitted on his behalf by counsel.

26   Further, for the reasons explained in these findings and recommendations, the jury instruction

                                          24

claim that petitioner complains should have been raised on appeal, ultimately lacks merit.[6] Appellate counsel's decision to press only issues on appeal that she believed, in her professional judgment, had more merit than the claims now suggested by petitioner was "within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771 (1970).  Accordingly, petitioner is not entitled to habeas relief as to his claim of ineffective assistance of appellate counsel.

### E.  Cumulative Error

In his traverse, petitioner claims that the cumulative effect of "several prejudicial errors" violated his right to a fair trial.  (Traverse at 6.)  Assuming that this claim has been properly raised, it should be rejected.  See Cacoperdo, 37 F.3d at 507 (a traverse is not the proper pleading to raise additional grounds for relief).

The Ninth Circuit has concluded that under clearly established United States Supreme Court precedent the combined effect of multiple trial errors may give rise to a due process violation if it renders a trial fundamentally unfair, even where each error considered individually would not require reversal.  Parle v. Runnels, 505 F.3d 922, 927 (9th. Cir. 2007) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) and Chambers v. Mississippi, 410 U.S. 284, 290 (1973)).  "The fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense 'far less persuasive,' Chambers, 410 U.S. at 294, and thereby had a 'substantial and injurious effect or influence' on the jury's verdict." Parle, 505 F.3d at 927 (quoting Brecht, 507 U.S. at 637).

/////

---

[6]  Respondents argue that petitioner failed to exhaust in state court his claim that his appellate counsel rendered ineffective assistance by failing to object to the jury instruction on the discharge of a firearm enhancement.  (P&A at 9 n.3.)  Respondents' argument in this regard is not persuasive.  Petitioner raised this claim in a petition for habeas corpus filed in the California Supreme Court.  (MTD, Ex. 9 at 6.)  Accordingly, this claim of ineffective assistance of appellate counsel has been properly exhausted.

1   This court has addressed each of petitioner's claims of error and has concluded

2   that no error of constitutional magnitude occurred at his trial in state court.  This court also

3   concludes that the alleged errors, even when considered together, did not render petitioner's

4   defense far less persuasive, nor did they have a substantial and injurious effect or influence on

5   the jury's verdict.  Accordingly, petitioner is not entitled to relief on his claim of cumulative

6   error.

7   CONCLUSION

8   For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

9   application for a writ of habeas corpus be denied.

10   These findings and recommendations are submitted to the United States District

11   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

12   days after being served with these findings and recommendations, any party may file written

13   objections with the court and serve a copy on all parties.  Such a document should be captioned

14   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

15   shall be served and filed within ten days after service of the objections.  The parties are advised

16   that failure to file objections within the specified time may waive the right to appeal the District

17   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18   DATED: September 10, 2008.

19

20   _____

21   DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE

22   DAD:8
     montgomery2116.hc

23

24

25

26

26